DECISION
After a jury found that the defendant, Mark A. Battista (Battista), committed several invasive and violent tortious acts against the plaintiff, Kenneth A. Castellucci (Castellucci), it awarded $175,000.00 in compensatory damages and $325,000.00 in punitive damages as a remedy. In response, Battista requests a new trial on liability and damages, a remittitur, or that the punitive award be vacated. Although the Court denies both the request for a new trial on liability and the request to vacate the award of punitive damages, a remittitur is warranted. Accordingly, and for the reasons given below, the Court conditions its denial of Battista's new trial motion on damages-compensatory and punitive-on Castellucci's consenting to a remittitur altering the judgment such that compensatory damages are assessed at $150,000.00 and punitive damages at $300,000.00.
 Standard of Review 
In considering a motion for a new trial pursuant to Rule 59, a trial justice
 "must review the trial evidence and exercise his or her independent judgment in passing upon the weight of the evidence and the credibility of the witnesses. In doing so, `a trial justice sits as the super [seventh] juror and is required to independently weigh, evaluate, and assess the credibility of the trial witnesses and evidence. If the trial justice determines that the evidence is evenly balanced or is such that reasonable minds, in considering that same evidence, could come to different conclusions, then the trial justice should allow the verdict to stand.'" Martinelli v. Hopkins, 787 A.2d 1158, 1165 (R.I. 2001) (internal citation omitted).
"[W]ith respect to an award of a specific amount for damages, . . . `no mathematical formula exists for awarding plaintiff damages for his or her pain and suffering.'" DiChristofaro v. Martino, 726 A.2d 15 (R.I. 1998). Indeed, "[t]he task of assessing compensatory damages is peculiarly within the province of the jury [and] . . . a new trial on the issue of damages may be ordered [only] if the trial court independently determines that the award is so excessive in comparison to the injuries sustained as to fail to work substantial justice between the parties," Paquin v.Tillinghast, 517 A.2d 246, 249 (R.I. 1986); that is, if it "is so grossly excessive as to shock the conscience or if the jury was clearly influenced by passion or prejudice or proceeded in a clearly erroneous fashion in arriving at the award," id.
Moreover, a justice can "conditionally correct or modif[y] the jury award by ordering a remittitur if the justice . . . conclude[s] that the award was unreasonable in light of the evidence presented at trial,"Jolicoeur Furniture Co. v. Baldelli, 653 A.2d 740, 754 (R.I. 1995), or "`if the award demonstrates that the jury proceeded from a clearly erroneous basis in assessing the fair amount of compensation to which a party is entitled,'" Accardi v. Full Channel TV, Inc., 771 A.2d 908, 909 (R.I. 2001).
Finally, "`a jury award of punitive damages may be set aside by the trial court if the amount "clearly appears to be excessive, or to represent the passion and prejudice of the jury rather than their unbiased judgment."'" Minutelli v. Boranian, 668 A.2d 317, 319 (R.I. 1995).
 The Trial Evidence and the Jury Award 
Although all the details of this trial need not be extensively reiterated, some are of course required to properly assess the merits of Battista's motion. From the testimony and other evidence presented at trial, the jury could readily conclude that during a mid-spring evening in 1998, Battista forcefully broke through Castellucci's locked front door, charged at him, and started choking him in his own home. Then, with Castellucci still within his grasp, Battista forced Castellucci backwards through the kitchen and into the dining room, where Battista undertook to slam Castellucci's head into the dining room table, all the while cursing and threatening Castellucci and his daughter. As a consequence of this assault, Castellucci struggled to breathe and frittered on the edge of consciousness.
Battista then forced Castellucci to the floor, causing him to hit his head yet again on the way down. As Castellucci looked up at his tormentor, he spied a handgun tucked into Battista's waist.
Castellucci then ran into his bedroom to retrieve an old Army gun. Upon returning to the front entrance, Castellucci was confronted by Battista pointing a gun at him from his car. After Castellucci fired two warning shots into the air, Battista was forced to beat a hasty retreat. Castellucci was taken by rescue to Our Lady of Fatima unit, St. Joseph's Hospital, where he was treated for chest pains, a sore neck, and overall physical and mental trauma. Also as a consequence of the attack, Castellucci suffers from lingering physical maladies which limit, even if not completely prevent, his day-to-day activities. In addition, one of Castellucci's treating physicians testified about the negative physical impact the attack had on Castellucci, to which Battista offered no opposing expert testimony. Moreover, Castellucci offered expert testimony about the psychological impact of the attack, which not only detailed the extent of his mental anguish (including post-traumatic stress disorder) but also credibly differentiated it from certain other psychological maladies from which Castellucci had been suffering. Finally, there was evidence from which the jury could infer that Battista had an ongoing intimate relationship with Castellucci's then-wife and that relationship precipitated Battista's attack.
As a consequence of his conduct, Battista was charged with various crimes. Ultimately, he plead nolo contendere to the charges of breaking and entering a dwelling without the consent of the tenant, carrying a pistol without a license, and simple assault and battery. Castellucci offered Battista's nolo contendere plea as evidence at trial. Although Battista explained that he plead nolo contendere only at his attorney's suggestion, he conceded all the elements of the crimes charged.
At trial, Castellucci was believable. His testimony was credible and very compelling. Contrarily, Battista was woefully lacking in credibility. His testimony was riddled with inconsistencies, half-truths, and untruths. Indeed, Battista was wholly unrepentant and arrogant. It should be noted that compared to the swaggering Battista, Castellucci was contained and diminutive.
After the Court instructed the jury on the law, the jury was given the case and supplied with a Court-produced jury-verdict form. That form posed thirteen questions, only the first nine of which are of concern here. In sequence (as the jury was instructed to answer), the first seven questions asked whether Battista had assaulted, battered, falsely imprisoned, intentionally inflicted emotional distress upon, negligently inflicted emotional distress upon, trespassed upon the property of, or invaded the privacy of Castellucci. The jury answered "yes" to all of these questions and thus proceeded to questions eight and nine, which inquired what, if any, compensatory and punitive damages should be assessed. As previously mentioned, the jury awarded $175,000.00 in compensatory damages and $325,000.00 in punitive damages. Battista then timely filed the motion that is the subject of this decision, to the merits of which the Court now turns.
 Analysis
From the evidence presented, there was only one reasonable conclusion that could be drawn, and that conclusion is precisely the one drawn by the jury: that Battista assaulted, battered, falsely imprisoned, intentionally inflicted emotional distress upon, trespassed upon the property of, and invaded the privacy of Castellucci. As such, the Court determines that at a minimum, reasonable minds, in considering the same evidence and the credibility of the witnesses, could come to different conclusions as to Battista's liability. Accordingly, Battista's new trial motion on liability is denied.
With respect to the punitive damages award, this Court determines that, other than that portion assumed to be attributable to the jury's finding Battista negligently inflicted emotional distress on Castellucci, as discussed below, it is neither clearly excessive nor represents the passion and prejudice of the jury. Battista, while carrying a gun, committed a surprise and violent home-invasion attack on Castellucci. Such behavior was criminal and as such clearly rises to the level of criminality required for punitive damages. See McFarland, Read Lundy, Inc. v. Brier, 769 A.2d 605, 611 (R.I. 2001) (holding that punitive damages are appropriate when there is evidence of such willfulness, recklessness, or wickedness on the part of the party at fault, as amounts to criminality, which for the good of society and warning to the individual ought to be punished). Simply, and based upon the totality of the evidence presented at trial, this Court concludes that Battista's behavior warrants punishment and that the jury's sanction is not excessive, except as noted below, nor representative of their passion and prejudice rather than their unbiased judgment.
As for Battista's argument that the punitive award must be vacated because Castellucci offered no evidence of Battista's financial wherewithal, the short reply is that no such evidence was necessary in order for the jury to properly exercise its discretion to award punitive damages. Indeed, although a "plaintiff is permitted, [he or she is] . . . not traditionally required[,] to present evidence bearing on the defendant's wealth or financial condition" for punitive damages to be properly awarded. 1 Dan B. Dobbs, Dobbs Law of Remedies 486 (2d ed. 1993); see also Sherman v. McDermott, 114 R.I. 107, 110, 329 A.2d 195, 197 (1974) (although financial ability of a defendant to respond is relevant to the issue of the amount of punitive damages to be awarded, proof of ability to pay the sum requested is not a condition precedent to finding a case proper for punitive damages); Greater Providence DepositCorp. v. Jenison, 485 A.2d 1242, 1244 (R.I. 1984) (court affirms award of punitive damages even in absence of "record evidence of his ability to pay"); Saunders v. VanPelt, 497 A.2d 1121, 1127 (Me. 1985) (in affirming award of punitive damages, the court holds that "the [trial] court may consider a defendant's wealth in making an award of punitive damages [and that] . . . wealth or lack thereof is one of the mitigating or aggravating factors that may be considered by the jury when determining whether punitive damages should be awarded [but] [n]either party offered evidence as to the defendant's assets").
In any event, the jury was provided with at least some sense of Battista's ability to pay punitive damages: there was evidence that he drove a gold Cadillac, that he provided a Mercedes Benz to the then-Mrs. Castellucci, that he sought entrie into an elite New Jersey country club, that he bought expensive gifts and clothes, that he was vice-president of CoreTech Associates and its predecessor CoreTech, and that he was vice-president of a Cookson International Division called Electrovert. In response to Castellucci's well-plead seeking of punitive damages, however, Battista offered nothing to mitigate the picture thus developed or to demonstrate an inability to pay a substantial punitive award. As such, the Court determines that the punitive award is not clearly excessive, except as noted below, or representative of the passion and prejudice of the jury rather than their unbiased judgment.
Nonetheless, a remittitur is warranted as to both compensatory and punitive damages because the jury presumably considered its finding that Battista negligently inflicted emotional distress on Castellucci in their calculation of a compensatory and punitive award. However, because the jury first found that Battista intentionally inflicted emotional distress upon Castellucci, that consideration was erroneous since "`duplicature recovery for the same underlying behavior is prohibited.'" Vallinoto v.DiSandro, 688 A.2d 830, 842 (R.I. 1997); see also American National FireIns. Co. v. Schuss, 607 A.2d 418, 422 (Conn. 1992) ("It is axiomatic, in the tort lexicon, that intentional conduct and negligent conduct, although differing only by a matter of degree are separate and mutually exclusive. . . . `As Holmes observed, even a dog knows the difference between being tripped over and being kicked.'") (internal citations omitted). Simply, Castellucci cannot collect twice for the same emotional distress.
Because it must be assumed from the structure of the jury-verdict form that the jury fashioned its award in part based upon its determination that Battista both negligently and intentionally inflicted emotional distress upon Castellucci, the jury proceeded from a clearly erroneous basis in assessing the fair amount of compensation to which Castellucci is entitled. However, since the Court determines that the negligence component was the "least" of the claims, especially since the jury found that Battista intentionally inflicted emotional distress, it will not order a new trial but will rather condition its denial upon Castellucci's consenting to a remittitur. Notwithstanding that the Court would have found that the jury's compensatory and punitive awards withstood review had it not factored the negligent-infliction-of-emotional-distress claim into its consideration at all, because it did, a certain amount must be remitted. In determining that amount, the Court has considered the evidence presented and the credibility of the witnesses and has tried to accomplish substantial justice between the parties informed by the conclusions of the jury.
 Conclusion
For the foregoing reasons, the Court conditions its denial of the new trial motion on damages-compensatory and punitive-on Castellucci's consenting to a remittitur altering the judgment such that compensatory damages are assessed at $150,000.00 and punitive damages at $300,000.00.
Counsel shall submit appropriate judgments for entry after notice.